FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

04 JAN -7 PM 3: 26

U.S. DISTRICT COURT
N.D. OF ALABAMA

AVICE PEARSON,           }
                         }
    Plaintiff,           }
                         }
         v.              }    CIVIL ACTION NO.
                         }    02-AR-2602-M
DR. RONALD HANSON, d/b/a }
EUROPEAN ANTIQUES,       }
                         }                    ENTERED
    Defendant.           }
                                              JAN 07 2004

## MEMORANDUM OPINION

Before the court is the motion of plaintiff, Avice Pearson ("Pearson"), for partial summary judgment on the issue of liability. Pearson, a former employee of defendant, Ronald Hanson ("Hanson"), claims that while employed with Hanson she was underpaid in violation of the minimum wage and overtime requirements of the Fair Labor Standards Act ("FLSA").

### Undisputed Facts

Hanson is a cardiologist with several offices in Northern Alabama. Antique collection is one of Hanson's hobbies. Between late-1998 and mid-1999, Hanson decided to open up an antique shop in Fort Payne, Alabama where he would sell antiques that he personally owned. Hanson called his antique shop "European Antiques." Hanson hired Pearson to assist him in running the store. Her duties included opening and keeping up the shop, answering the telephone, and assisting customers. From the opening

of the shop until April 2000, the store hours were 10:00 am to 6:00 pm, Monday through Saturday. In April 2000, Hanson changed the work hours to 11:00 am to 5:00 pm, Monday through Saturday, in order to accommodate some of Pearson's health problems. Pearson was not paid an hourly wage. She was paid her monthly car payments in lieu of wages. Until April 2000, Hanson paid $1,041.51 per month in car payments. In April 2000, Pearson bought a new car. Hanson took possession of the old car and began making payments on the new car. From May 2000 through July 2001, Hanson paid $745.82 per month in car payments on the new car. Pearson worked for Hanson under this arrangement until Hanson decided to close the store in June 2001.

## Analysis

The FLSA was enacted in order to prohibit "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers...." 29 U.S.C. § 202. The FLSA guarantees a minimum wage[1] and overtime compensation[2] for those employees covered by the Act.

---

[1] The FLSA minimum wage provision provides that, "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce...wages at the following rates: (1) except as otherwise provided in this section...not less than $5.15 an hour beginning September 1, 1997...." 29 U.S.C. § 206(a)(1).

[2] The overtime compensation provision provides that, "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce...for a workweek

*See* 29 U.S.C. §§ 206, 207. An individual employee is covered under the FLSA when "engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a).

The only issue presented in this case is whether Pearson "engaged in commerce or the production of goods for commerce." Justice Frankfurter explained that the "search for a dependable touchstone by which to determine whether employees are 'engaged in commerce or in the production of goods for commerce' is as rewarding as an attempt to square a circle." *A.B. Kirschbaum Co. v. Walling,* 316 U.S. 517, 520 (1942). In *Kirschbaum* the Supreme Court,

> as it has in numerous cases since, recognized that application of the FLSA to an infinite number of industrial and commercial situations is essentially a line-drawing exercise, and that in delineating between areas of activities regulated by the Act and those left to state regulation, courts should be guided by the fixed points of national policy, legislative history, and administrative practicalities.

*Brennan v. Wilson Building Inc.,* 478 F.2d 1090, 1093-94 (5th Cir. 1973).[3] In *Wilson Building,* the court added one more guidepost: judicial precedent. *Id.* at 1094. In determining the coverage of

---

longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

[3] The Eleventh Circuit is bound by decisions made by the former Fifth Circuit before October 1, 1981. *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

the Act, courts should give the provisions of the FLSA a broad, liberal construction, and should be guided by practical, and not technical, considerations. *Id.* Courts should focus on the job activities of the employee and not the employer's general business. *Id.* While no *de minimis* rule applies in FLSA cases,

> an employee whose in-commerce or production activities are isolated, sporadic, or occasional and involve only insubstantial amounts of goods will not be considered "engaged in commerce or in the production of goods for commerce" by virtue of that fact alone. The law is settled that every employee whose activities in commerce or in the production of goods for commerce, even though small in amount are regular and recurring, is considered "engaged in commerce or the production of goods for commerce."

29 C.F.R. § 779.109.

The test for determining whether an employee has "engaged in commerce" is "not whether an employee's activities affect or directly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be part of it" rather than an isolated local activity. *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943); *Marshall v. Victoria Transp. Co.*, 603 F.2d 1122, 1124 (5th Cir. 1979). Employees are considered to be "engaged in commerce" when they perform: "(1) work related to the actual movement of commerce, (2) work that regularly uses the channels of commerce, and (3) work related to the instrumentalities of commerce." Ellen C. Kearns,

The Fair Labor Standards Act 106 (1999).[4]

The FLSA specifies that an employee is considered to have engaged in the production of goods if the "employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State." 29 U.S.C. § 203(j).

Pearson argues that four facts support her claim that she "engaged in commerce" and/or "the production of goods for commerce." First, "customers from other states visited the shop." In support of this statement, Pearson cites an excerpt from Hanson's deposition. Pearson cites the following exchange:

> Q: Were you [at the antique store] enough to know where your walk-in traffic was coming from?
> A: No.
> Q: So you don't know whether they were local or out-of-towners passing through or --
> A: Mrs. Pearson called me on one occasion...I said I would call her back. When I called her back, I found out that it was some visitors from Atlanta, and they had already left the store.

Also supporting Pearson's statement that customers from other states visited the shop is a statement in her affidavit. Pearson swears that "many of the customers to whom" she showed the antiques in the store were from states other than Alabama. Pearson Aff. ¶

---

[4] The Act defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several states or between any State and any place outside thereof." 29 U.S.C. § 203(b).

7.

Second, Pearson argues that the location of the business in Ft. Payne, Alabama, and its proximity to both Tennessee and Georgia, strongly suggest a nexus with interstate commerce.

Third, Pearson says she assisted in the transportation of the store inventory "across public highways via delivery truck to the shop in Ft. Payne." According to Pearson, when the store first opened, she helped transport the antiques from Hanson's home in Etowah County, Alabama to the store in Ft. Payne, Alabama via I-59.

Fourth, Pearson answered telephone calls from out-of-state customers. In her affidavit, Pearson swears that her "job duties...required [her] to answer phone calls from prospective customers. On occasion, [she] would receive phone calls from individuals who identified themselves as being from outside Alabama." Pearson Aff. ¶ 9.

Pearson was unable to cite any case where facts similar to the ones she relies on here were sufficient to support a plaintiff's motion for summary judgment. Pearson relies on *Marshall v. Victoria Transp. Co.*, 603 F.2d 1122 (5th Cir. 1979);[5] *Brennan v.*

---

[5] In *Victoria Transp.*, the defendants were two bus companies in Texas. *Victoria Transp.*, 603 F.2d at 1124. The companies maintained terminals within walking distance of the Mexican border. *Id.* The evidence demonstrated that, for each of the defendants, at least 14 percent of the journeys of their passengers either originated or terminated in Mexico. *Id.* In deciding whether the bus drivers were "engaged in commerce" under the FLSA, the court found "that transporting persons making international journeys was a regular, recurring and substantial

*Wilson Bldg. Inc.*, 478 F.2d 1090 (5th Cir. 1090);[6] and *Johnston v. Spacefone Corp.*, 706 F.2d 1178 (11th Cir. 1983).[7] These cases only identify general principles that apply to FLSA cases. The facts in those cases are substantially different from the facts in the case before the court.

The court is left with four facts without any case law to suggest that the said facts, separately or in combination, are

---

part of the work of defendants' employees in the operation of all of their routes. Because their work was entwined with a continuous stream of international travel, they were engaged in commerce within the meaning of the Act." *Id.* at 1125.

[6] In *Wilson Bldg.*, the defendant owned a building and rented it to tenants for a profit. *Wilson Bldg.*, 478 F.2d at 1092. The defendant employed elevator operators. The elevators regularly transported "passengers as well as persons delivering interstate mail, parcel post, and freight." *Id.* The issue before the *Wilson Bldg.* court was whether the elevator operators were covered under the FLSA. *Id.* at 1091. The Fifth Circuit agreed with the district court's holding that "the elevator operators' transportation of mail, parcel post, and freight is regular, frequent, and substantial enough to render the operators 'engaged in commerce' within the meaning of the Act." *Id.* at 1093; *see also id.* at 1098.

[7] In *Spacefone*, the defendant, Spacefone Corp. ("Spacefone"), hired the plaintiff, William Johnston ("Johnston"), "as a designer/draftsman to assist in the development of a 'state-of-the-art' cordless telephone." *Spacefone*, 706 F.2d at 1180. While Johnston was employed with Spacefone, the company "developed an unperfected prototype that was transported interstate to solicit investors for the project, [but did not begin] mass production of a finished product." *Id.* The *Spacefone* court had to decide whether Johnston was "engaged in the production of goods for commerce." *Id.* The Eleventh Circuit held that Johnston was "engaged in the production of goods for commerce" because he was actively involved in the planning stages of a phone that Spacefone reasonably believed would move or cause movement in interstate commerce. *Id.* at 1180-82.

sufficient to make out a *prima facie* case, much less an absolute case, that Pearson either "engaged in commerce" or "in the production of goods for commerce." Had Pearson done exhaustive research she would not have found any binding cases to support her position, unless this court's research was flawed.

The regulations adopted by the DOL provide some insight. The regulations specify that an antique shop should be considered a retail establishment. 29 C.F.R. § 779.320. The regulations also specify that a sales clerk in retailing "who regularly or recurrently...sells...merchandise for delivery to points outside the State or which are to be shipped or delivered to a customer from a point outside the State...or who wraps, packs, addresses or otherwise prepares goods for out-of-State shipments is performing covered activities." 29 C.F.R. § 779.117. While this regulation is meant only as an illustration, it does demonstrate the type of activities performed by a sales clerk that would be covered by the FLSA. The facts involving sales activity that Pearson presents are dissimilar to the DOL example and much more limited in scope. Even if Pearson's activities would have fallen under the Act if they had been "regular" or "recurrent," as required by the FLSA, her activities could not fairly be described as "regular" or "recurrent." See 229 C.F.R. §§ 779.109, 779.117.

## Conclusion

Considering the lack of evidence and the lack of case law in

support of Pearson's motion, it will be denied by separate order. In fact, a motion for summary judgment by Hanson would have been more appropriate than the motion for partial summary judgment by Pearson.

DONE this ___7th___ day of January, 2004.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE